OPINION
{¶ 1} Defendant-appellant William L. Harris appeals from his conviction and sentence for Trafficking in Drugs. He contends that the trial court erred by overruling his motion to suppress evidence gained during an investigatory stop. *Page 2 
 {¶ 2} We conclude that the trial court's decision denying the motion to suppress is supported by competent, credible evidence indicating that there was a reasonable, articulable suspicion justifying the investigatory stop. We further conclude that Harris was not placed under arrest at the time of the initial stop.
 {¶ 3} Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} In late November, 2006, at 4:25 p.m., Dayton Police Detective Raymond St. Clair was on duty traveling north on Keowee Street when he observed William Harris with a woman sitting in front of a church. The police had received "some citizen complaints regarding drug activity increasing in that area." The area is known as a "high drug and prostitution area." St. Clair had made "hundreds" of arrests in this area for drugs and prostitution.
 {¶ 5} Since Harris and the woman were "loitering in front of a closed church," St. Clair decided to watch them to determine whether they were conducting a drug transaction. He observed a white truck pull up to the curb and Harris and the woman get into the truck. St. Clair, with binoculars, was able to see Harris and the driver with "their heads turned towards each other * * * talking with each other quite a bit." Harris and the woman exited the truck after less than a minute and began walking away from the truck, which performed a U-turn and drove away. St. Clair contacted other officers and instructed them to conduct an investigative stop of Harris while St. Clair initiated a stop of the truck. Immediately thereafter, Dayton Police Officer Jon Zimmerman approached Harris and the woman. He displayed his badge and identified himself as an officer. Zimmerman then stated that he needed to talk to Harris. Harris agreed to speak *Page 3 
to Zimmerman, at which point Zimmerman informed him of his rights underMiranda v. Arizona (1966), 384 U.S. 436. Zimmerman then asked permission to conduct a pat-down search, to which Harris consented. Zimmerman conducted the search and discovered a cellophane baggie containing twenty-eight Xanax pills.
 {¶ 6} Harris was indicted on one count of Trafficking in Drugs. After entering a plea of not guilty, Harris filed a motion to suppress. After a hearing on the motion, the trial court overruled it. Harris then entered a plea of no contest, was found guilty, and was sentenced to community control. From his conviction and sentence, Harris appeals.
 II {¶ 7} Harris' sole assignment of error states as follows:
 {¶ 8} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 9} Harris contends that the police had no reasonable suspicion justifying an investigatory stop. He contends that St. Clair "could assert no specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted an investigatory stop." Harris further contends that the stop constituted an arrest without probable cause. He argues that all evidence arising from the stop and arrest should have been suppressed.
 {¶ 10} We begin by noting that we disagree with Harris's claim that he was placed under arrest. The mere fact that Officer Zimmerman informed Harris of his Miranda rights does not necessitate a finding that an arrest was made. Police officers are free to advise suspects, not under arrest, with whom they are talking of their rights to silence *Page 4 
and to counsel, either out of an abundance of caution, or out of a concern that any statements made are completely free and voluntary, and we do not wish to discourage police officers from offering gratuitous advice concerning constitutional rights by holding that to do so converts an encounter that would otherwise constitute a brief, investigative stop into a full-blown arrest. The facts that Harris was not placed in handcuffs and that Zimmerman asked permission to conduct a pat-down search belie the claim that Harris was arrested.
 {¶ 11} We next address the question of whether the record supports the trial court's decision that the officers had a sufficient basis for an investigatory stop. "The investigative stop exception to the Fourth Amendment allows a police officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity `may beafoot.'" State v. Dow, Montgomery App. No. 22055, 2008-Ohio-1867, ¶ 5, citing United States v. Arvizu (2002), 534 U.S. 266. (Emphasis added.) Courts must examine the totality of the circumstances of each case to determine whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. Id.
 {¶ 12} This totality of the circumstances approach allows police officers to draw upon their own experience when deciding whether the requisite reasonable suspicion is present. Id. at 273-74. For this reason, when a court reviews an officer's reasonable suspicion determination, it must give "due weight" to factual inferences drawn by law enforcement officers. Id. An officer's reliance on a mere "hunch" is insufficient to justify a stop, but the likelihood of criminal activity need not rise to the level required for probable cause, and that likelihood need not rise to the level required to satisfy the *Page 5 
preponderance-of-the-evidence standard of proof. Id. at ¶ 6.
 {¶ 13} Those circumstances must be viewed "through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold," taking into account the officer's experience and training, and how the situation would have been viewed by any other officer on the street. State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
 {¶ 14} In this case, when questioned why he decided to have Harris and the woman stopped, St. Clair testified:
 {¶ 15} "From my experience of doing surveillance on other persons and due to the fact that I have also purchased drugs from individuals working as a Dayton detective where I've had drug dealers get into my vehicle and we'd do a transaction well less than a minute. * * * So the culmination of all my training and the experience I've had with purchasing drugs for the police department, I knew then that a drug transaction had just occurred.
 {¶ 16} "* * *
 {¶ 17} "Due to the fact that Mr. Harris was loitering in a very high drug area where I've made hundreds of arrests in the past for drug activity within that neighborhood. And increased citizen complaints we've had, particularly from the payphone in the parking lot area, which is across the street from where they were sitting.
 {¶ 18} "Due to the fact that Mr. Harris got into the vehicle and made contact with the driver, had a short conversation. There was movement inside the truck. Even though I could not see a hand-to-hand transaction, I knew that from my past experience buying drugs for the police department from drug traffickers that the drug traffickers get *Page 6 
inside the vehicle to prevent the hand-to-hand transaction from being specifically seen even though the drug transaction's still occurring. In a sense the transaction was less than a minute, departed the vehicle and went in two different directions, I knew then that a drug transaction occurred. It was without a doubt."
 {¶ 19} The trial court found that the totality of the circumstances, i.e. the matters observed by St. Clair taken together with St. Clair's experience, indicated that St. Clair had an articulable and specific reason for initiating the stop.
 {¶ 20} When reviewing a trial court's decision on a motion to suppress, we are bound by the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v.Retherford (1994), 93 Ohio App. 3d 586, 592. We then must independently determine, as a matter of law, without deference to the trial court's legal conclusion, whether that evidence meets the applicable legal standard. Id.
 {¶ 21} We conclude, based upon this record, that the trial court did not err in determining that the totality of the circumstances in this case warranted an investigative stop. Accordingly, Harris' sole assignment of error is overruled.
 III {¶ 22} Harris's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WALTERS, JJ., concur.
 Copies mailed to: *Page 7 
Mathias H. Heck, Jr.
Mark J. Keller
Jeffrey T. Gramza
 Hon. Michael T. Hall *Page 1