OPINION
{¶ 1} The State of Ohio appeals a judgment of the Montgomery County Common Pleas Court granting the defendant Stephen Schneider's motion to suppress evidence. The State asserts that the trial court improperly granted Schneider's motion to suppress, because Officer Jackson had a reasonable articulable suspicion that *Page 2 
Schneider had engaged in a drug transaction and that the subsequent patdown that resulted in the discovery of the crack cocaine was both voluntary and based upon a reasonable suspicion that Schneider was armed and dangerous. Finding that the patdown of Schneider was neither consensual nor based upon a reasonable articulable suspicion that he had committed a crime, we must affirm the trial court.
 {¶ 2} At approximately 11:30 p.m. on August 5, 2007, off-duty Riverside Police Officer Angela Jackson was visiting a friend near the intersection of Shedborne and Darst in the City of Dayton. Jackson, having just come off duty, was dressed in her Riverside Police Department uniform. This location is a high-crime area, and Jackson had previously assisted Dayton police officers make arrests in that area.
 {¶ 3} As Jackson, her friend and some other people were standing in the driveway of her friend's house talking, she observed Schneider walking his dog on the opposite side of the street. Jackson immediately radioed the Dayton Police Department that she believed a drug transaction was about to occur. The Dayton Police Department dispatched two officers to go to the scene.
 {¶ 4} As Schneider approached the intersection, Officer Jackson observed a vehicle come from the north towards the intersection at a very slow speed, and then turn right on Darst. The vehicle, without coming to a complete stop, crossed over the centerline towards Schneider, and Schneider approached the vehicle in the street. Jackson observed Schneider's hand go into the window of the vehicle with "furtive movements," leading her to believe an exchange had taken place. The vehicle drove off and Schneider went back to the sidewalk and continued walking his dog.
 {¶ 5} Schneider then approached Officer Jackson and the other people in the *Page 3 
driveway, and struck up a conversation. Schneider asked Jackson what she was doing. Jackson replied "watching a drug deal." Jackson asked Schneider for his name and social security number, which he gave to her. Jackson ran a warrant check on Schneider, which came back clear. Officer Jackson did not recall whether she informed dispatch at this time that she had in fact observed what she believed was a drug transaction.
 {¶ 6} At that time, Dayton Police Officers Smith and Smiley arrived at the scene. Jackson identified Schneider to the officers, and Officer Smith immediately informed Schneider that he was going to pat Schneider down for weapons. During the pat down, Officer Smith felt rocks in Schneider's left-front pocket. Smith then asked Schneider if he could retrieve those rocks, and Schneider consented. After retrieving the substance, Smith recognized the rocks as crack cocaine, and upon testing them, determined them to be crack. Schneider was then placed under arrest for possession of the drugs.
 {¶ 7} Schneider was indicted for possession of crack cocaine on October 4, 2007. Schneider filed a motion to suppress, which was granted on January 11, 2008. The trial court found that Officer Jackson did not have a reasonable articulable suspicion to stop Schneider, and that Officer Smith did not have reasonable articulable suspicion to warrant a pat-down or search.
 {¶ 8} The State appeals the judgment of the trial court, pursuant to Crim. R. 12(K), setting forth three assignments of error for our review.
 "First Assignment of Error {¶ 9} "Officer Jackson had a reasonable articulable suspicion that Schneider *Page 4 
had engaged in a drug transaction based on her observations, experience and training.
 "Second Assignment of Error {¶ 10} "The officer had reasonable articulable suspicion that Schneider was armed and dangerous.
 "Third Assignment of Error {¶ 11} "When voluntary consent is given for a search, a police officer can justifiably seize the evidence."
 {¶ 12} We would first note that "App. R. 12(A) directs this Court to determine the merits of appeals `on the assignments of error set forth in the briefs required by Rule 16.' App. R. 12(A) further provides:
 {¶ 13} "`* * * Errors not specifically pointed out in the record and separately argued by brief may be disregarded. All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error.'
 {¶ 14} "The `Assignments of Error' should designate specific rulings that the appellant challenges on appeal. They may dispute the final judgment itself or other procedural events in the trial court. The `Statement of Issues' should express one or more legal grounds to contest the procedural actions challenged by the assigned errors. They may subdivide questions presented by individual assigned errors, or they may be substantially equivalent to the assigned errors." (Emphasis removed.) North Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984),16 Ohio App.3d 342, 343-344, 476 N.E.2d 388.
 {¶ 15} In this case, the State has not properly set forth any assignments of error *Page 5 
allegedly committed by the trial court. Instead, the State has set forth propositions of law, which are appropriate in the Supreme Court of Ohio. We will proceed on the basis that the error set forth by the State in this appeal is that the trial court erred in granting Schneider's motion to suppress, and we will treat the State's propositions of law as the statement of issues under that general assignment of error.
 {¶ 16} The standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Vance (1994), 98 Ohio App.3d 56, 58-59,647 N.E.2d 851; State v. Ferguson, Defiance App. No. 4-01-34, 2002-Ohio-1763. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972. However, an appellate court makes an independent determination of the law as applied to the facts.Vance, 98 Ohio App.3d at 59.
 {¶ 17} In its brief, the State argues that Officer Jackson had a reasonable articulable suspicion that Schneider engaged in a drug transaction, which was sufficient to justify an investigative stop by her. And, they argue that Officer Smith had a reasonable articulable suspicion that Schneider was armed and dangerous sufficient to justify the weapons pat down. Finally, the State claims that Schneider's consent to the search of his person during the investigative stop was voluntary.
 {¶ 18} This Court has pointed out on numerous occasions that contact between police officers and the public can be characterized in essentially three different ways: a casual encounter, an investigativeTerry stop, and an arrest. See, e.g., State v. Aufrance, Montgomery App. 21870, 2007-Ohio-2415; State v. Shelton, Montgomery *Page 6 
App. No. 22116, 2008-Ohio-1876; State v. Osborne (Dec. 13, 1995), Montgomery App. No. 15151.
 {¶ 19} The first manner of contact and the least restrictive is contact that is initiated by a police officer for purposes of inquiry only. "[M]erely approaching an individual on the street or in another public place[,]" asking questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. United States v. Flowers (C.A.6, 1990), 909 F.2d 145, 147. The United States Supreme Court has repeatedly held that mere police questioning does not constitute a seizure for Fourth Amendment purposes. Florida v. Bostick (1991), 501 U.S. 429, 434,111 S.Ct. 2382, 115 L.Ed.2d 389; INS v. Delgado (1984), 466 U.S. 210,212, 104 S.Ct. 1758, 80 L.Ed.2d 247. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; * * *, provided they do not convey a message that compliance with their request is required." Bostick, 501 U.S. at 434-435 (citations omitted). A person approached in this fashion need not answer any questions, and may continue on his or her way unfettered by any real or implied restraint, and he may not be detained even momentarily for his refusal to listen or answer. Id.
 {¶ 20} A more intrusive kind of contact is referred to as a "Terry stop." This stop constitutes a temporary detention of the individual, and it must be predicated upon a reasonable articulable suspicion. This type of detention constitutes a seizure, but it does not violate the Fourth Amendment "if there is articulable suspicion that a person has committed or is about to commit a crime." Florida v. Royer (1982),460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229. *Page 7 
 {¶ 21} In reviewing the evidence, it is clear that Schneider initiated the initial encounter between himself and Officer Jackson. He approached the group of people, including Officer Jackson, and asked Jackson what she was doing. In response, Jackson stated that she was watching a drug deal going down. Jackson asked Schneider his name and social security number, which he voluntarily supplied. She then ran a records check over the radio on him, which came back clean. There was no attempt by Jackson to detain Schneider or to inquire as to the crime she believed that she had just witnessed. Simply because Jackson believed that a crime had occurred does not otherwise convert this innocuous encounter into an investigative stop. At this point there was no detention.
 {¶ 22} The next event that occurred was the approach of Dayton Police Officer Smith. As Smith approached the group, Officer Jackson identified Schneider to Smith. Smith immediately informed Schneider that he was going to pat him down for weapons. Smith's testimony was that "[a]ny time there's drugs, no matter whether you have a dealer or a user, they'll either have anything from a razor knife to a gun, whenever there's drugs involved. No matter who they are, whether they're a normal drug user who uses drugs every day or if they're someone who just sells it and doesn't use it at all, there's always a weapon involved normally." That was the basis expressed by the officer for the pat down of Schneider.
 {¶ 23} Even if an investigatory stop and detention of Schneider might have been justified, it does not necessarily follow that a frisk for weapons was also warranted. State v. Martin, Montgomery App. No. 20270,2004-Ohio-2738, at ¶ 14. A pat down search for weapons requires reasonable grounds to believe that the suspect is armed *Page 8 
and dangerous. State v. Andrews (1991), 57 Ohio St.3d 86, 89,565 N.E.2d 1271.
 {¶ 24} However, in Martin, we observed that "Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon." Martin at ¶ 17. The Ohio Supreme Court has held that "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed. * * * The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous." State v. Evans, 67 Ohio St.3d 405, 413, 1993-Ohio-186,618 N.E.2d 162. In that light, this Court has consistently held that an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat down search for weapons.Martin at ¶ 17; State v. Taylor (1992), 82 Ohio App.3d 434,612 N.E.2d 728; State v. Lindsey (Jun. 23, 2000), Montgomery App. No. 18073.
 {¶ 25} At the time Officer Smith arrived on the scene and informed Schneider that he was going to pat him down for weapons, the stop was no longer a casual encounter, but ripened into a Terry stop, which must be predicated upon "a reasonable suspicion, based upon articulable facts, that criminal activity `may be afoot.'" State v. Dow, Montgomery App. No. 22055, 2008-Ohio-1867, at ¶ 5, citing United States v. Arvizu
(2002), 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740. Courts must examine the totality of the circumstances of each case to determine whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. Id.
 {¶ 26} The totality of the circumstances test requires that the officer's own experience is the principal factor that the court must use in making its judgment as to whether the requisite reasonable articulable suspicion is present. Arvizu, *Page 9 534 U.S. at 273-274. Consequently, a court reviewing an officer's reasonable suspicion determination, must give "due weight" to factual inferences drawn by law enforcement officers. Id. While an officer's mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause. State v. Harris, Montgomery App. No. 22267, 2008-Ohio-3871, at ¶ 12. And, these circumstances must be viewed "through the eyes of a reasonable and prudent police officer on the scene who must react as they unfold[.]"Andrews, 57 Ohio St.3d at 87-88.
 {¶ 27} The trial court found that the events witnessed by Officer Jackson did not give her a reasonable articulable suspicion that a drug transaction had occurred prior to the arrival of Officer Smith. InHarris, this court affirmed the denial of a suppression motion with a similar fact pattern; however, in Harris, the officer's testimony as to the facts that he observed was accompanied by detailed testimony as to how his training and experience led him to the conclusion that he had just witnessed a drug transaction. Herein, we have Officer Jackson's testimony that the area was a "high crime, high drug" area. We then have her description of the facts that she observed and the conclusions that she drew. The record contains no evidence of the officer's training and experience that would have allowed her to conclude that what she had observed was, in fact, a drug transaction. The evidence is clear that merely upon seeing a man walking his dog in this neighborhood, Officer Jackson believed that a drug transaction was about to occur and that she communicated this fact to the Dayton Police Department. There was apparently no further communication to the Police dispatch as to the fact that she believed that the transaction subsequently *Page 10 
occurred. Clearly, at the point of her initial radio contact, there was nothing more than a hunch. Thereafter, Officer Jackson observed the automobile slowly approach Schneider, and she observed Schneider's hand go into the window of the vehicle, and then she observed the vehicle drive away. Without testimony as to how her training and experience allows her to conclude that these facts convinced her that a drug transaction occurred, the evidence must be suppressed.
 {¶ 28} Because the pat down of Schneider was not based upon a reasonable articulable suspicion of criminal activity, it was illegal, and any consent obtained thereafter by Officer Smith is vitiated by the illegal pat down.
 {¶ 29} The State's assignment of error is overruled.
 {¶ 30} For the foregoing reasons, the judgment of the Montgomery County Common Pleas Court is hereby affirmed.
FAIN, J. and GRADY, J., concur
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Johnna M. Shia
Andrea Oladi
Charles L. Grove
 Hon. Jeffrey E. Froelich *Page 1