OPINION
{¶ 1} The State of Ohio appeals a judgment of the Montgomery County Common Pleas Court granting the defendant's, Torance Hicks, motion to suppress evidence. The State
 {¶ 2} asserts that the trial court improperly granted Hicks's motion to suppress, *Page 2 
because Detective Myers had a reasonable articulable suspicion that Hicks was at the premises for the purposes of engaging in a drug transaction, and that the subsequent pat-down that resulted in the discovery of the crack cocaine was based upon a reasonable suspicion that Hicks was armed and dangerous. Finding that the pat-down of Hicks was appropriate, we reverse the trial court's decision.
 {¶ 3} At approximately 9 p.m. on August 22, 2007, Dayton Police officers were executing a search warrant at 802 Harvard Boulevard in the City of Dayton. During the search, Detective Myers stepped out onto the front porch of the residence and encountered Hicks coming towards the front door. Upon seeing Detective Myers clothed in police gear, Hicks looked surprised. Myers asked if he could help Hicks, and Hicks responded that he was there to see "Black," or Rondric Bogan, the individual named in the search warrant. Prior to Myers leaving the house, he was aware that officers had already recovered "a good quantity" of crack cocaine and weapons, and that the search was still ongoing.
 {¶ 4} Detective Myers advised Hicks that he was going to pat him down for Myers's safety and Hicks complied. During the pat-down, Myers felt Hicks's "hands clench up and * * * his forearms tightening up." Because Myers believed Hicks was about to either fight or flee, he told Hicks that he was not under arrest, but that he was going to be handcuffed for Myers's safety.
 {¶ 5} When Detective Myers resumed the pat-down, he felt "a rocky hard substance that [he] immediately recognized to be crack cocaine" in Hicks's front pants-pocket. Myers removed the baggie containing the rocks from Hicks's pocket, and upon field testing, determined that it was in fact crack. Following the arrest of Hicks, Detective Myers searched Hicks's vehicle prior to it being towed and found more crack cocaine in *Page 3 
the car.
 {¶ 6} After indictment for possession of crack cocaine, Hicks filed a motion to suppress the evidence and the statements that he made thereafter. The trial court granted the suppression motion as to the physical evidence, but overruled it as to Hicks's statements.
 {¶ 7} The State appeals the judgment of the trial court, pursuant to Crim. R. 12(K), setting forth one assignment of error for our review.
 Assignment of Error THE TRIAL COURT ERRED WHEN IT SUPPRESSED THE CRACK COCAINE RECOVERED FROM HICKS. THE FACT THAT THE OFFICERS WERE EXECUTING A SEARCH WARRANT IN A DRUG HOUSE AUTHORIZED THE OFFICERS TO PAT HICKS DOWN FOR WEAPONS WHEN HE APPEARED ON THE FRONT PORCH AND ASKED FOR THE TARGET OF THE WARRANT BY NAME.
 {¶ 8} The standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Vance (1994), 98 Ohio App.3d 56, 58-59,647 N.E.2d 851; State v. Ferguson (April 18, 2002), Defiance App. No. 4-01-34, 1002 WL 596115, at *2. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact."State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. However, an appellate court makes an independent determination of the law as applied to the facts. Vance at 59. The facts found by the trial court are essentially the facts as set forth above.
 {¶ 9} This court has repeatedly held that a brief investigative detention is allowable and does not offend the Fourth Amendment under certain circumstances. Such a detention is known as a Terry stop, and it must be predicated upon "a reasonable suspicion, based upon specific and articulable facts, that criminal activity `may be afoot.'" *Page 4 State v. Dow, Montgomery App. No. 22055, 2008-Ohio-1867, at ¶ 5, citingUnited States v. Arvizu (2002), 534 U.S. 266, 122 S.Ct. 744. Courts must examine the totality of the circumstances of each case to determine whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. Dow.
 {¶ 10} The totality of the circumstances approach requires that the court allow the officer's own experience to suggest whether the requisite reasonable articulable suspicion is present. Arvizu
at 273-274. Consequently, a court reviewing an officer's reasonable suspicion determination must give "due weight" to factual inferences drawn by law enforcement officers. Id. While an officer's mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause. State v. Harris, Montgomery App. No. 22267, 2008-Ohio-3871, at ¶ 12. And, these circumstances must be viewed "through the eyes of the reasonable and prudent police officer on the scene who must react as they unfold."State v. Andrews (1991), 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271.
 {¶ 11} In this case, Detective Myers testified that he had been a police officer for nine and one-half years and that he had been with the drug unit for four years. He also testified that he was involved in the investigation of Rondric Bogan, which resulted in the search warrant being issued to search his residence. Detective Myers testified that Bogan's residence was a "drug house." Myers further stated that he believed, based upon his experience with drug houses, that Hicks was coming to the house to either purchase drugs or drop off drugs. He further testified that any time someone comes to a drug house there is a concern that they are armed because guns and drugs go hand-in-hand. He also testified that through his experience, when he felt the hard, rock-like substance in Hicks's front-pants pocket, he knew it was crack. He stated his experience *Page 5 
consisted of approximately 800 — 900 recoveries of crack cocaine during his career and participation in over 500 search warrant executions.
 {¶ 12} In State v. Martin, Montgomery App. No. 20270, 2004-Ohio-2738, this court, considering similar circumstances, determined that an investigative detention was justified when an individual walked into an apartment where the police were conducting a drug search. And, we determined that, because of the prevalence of weapons where drugs are being sold and used, a pat-down for weapons is justified. InMartin, however, the search revealed no drugs or weapons; only money was recovered. In the present case, both weapons and drugs had been recovered prior to the appearance of Hicks.
 {¶ 13} Because the premises being searched was a drug house, where the police had already established sufficient probable cause of drug activity, and because the ongoing search confirmed the probable cause determination by uncovering a significant quantity of crack cocaine and weapons, the approach of Hicks to the premises, indicating a familiarity with the subject of the search, raised sufficient suspicion for Detective Myers to briefly detain Hicks to determine whether criminal activity was afoot.
 {¶ 14} And, the totality of these facts and circumstances, when viewed through the eyes of Detective Myers, gives rise to a reasonable and legitimate fear for the safety of himself and the other officers while investigating the suspected drug activity at Bogan's residence. Therefore, the minimally-intrusive pat-down search for weapons was justified.
 {¶ 15} The State's assignment of error is sustained. The judgment of the trial court is reversed, and this matter will be remanded to the trial court for further proceedings consistent with this opinion.
 WOLFF, P.J., and GRADY, J., concur. *Page 1