OPINION
{¶ 1} Defendant-Appellant, Robert Barnett, appeals a judgment of the Montgomery County Common Pleas Court overruling his motion to suppress evidence. Barnett asserts that the search of his person and residence violated his fourth amendment rights. Finding that the search of his person exceeded the scope of a permissible Terry patdown, and that *Page 2 
the subsequent search of his apartment was therefore not consensual, we must reverse the trial court and remand the cause for further proceedings.
 {¶ 2} In the early evening hours of February 16, 2006, several officers of the Dayton Police Department narcotics unit were conducting a "buy-bust" operation at Northcrest Court Apartments located on Needmore Road in the City of Dayton. The plan for the "buy-bust" was for Detective Barrett, who was both in plain clothes and in an unmarked vehicle, to travel through the parking lot of the apartment complex, and see if any individuals would approach him and attempt to sell narcotics. Several other officers in Dayton Police raid uniforms were in unmarked vehicles, which were strategically placed, to complete any arrests and prevent escape. Barrett's drive through resulted in no contacts, and he communicated this fact to the other officers by radio. An unmarked van containing seven officers was parked across the street from the complex, and they decided they would make a circle through the parking lot of the apartments. During their drive-through, the defendant, Robert Barnett, approached the van, waving his arms, pointing to a spot where he wanted them to pull over. This is the manner in which drug sellers commonly attempt to make contact with potential drug buyers. The van was stopped and Detective House exited the side of the van, identifying himself to Barnett as a Dayton Police officer.
 {¶ 3} At this point, Barnett began making "very overt, very aggressive" shoving motions with his left hand in the area of the rear waistband of his pants. Detective House yelled at Barnett to show him his hands, because he believed Barnett had a weapon. House then took Barnett down and placed him in handcuffs. After getting Barnett back on his feet, House did a weapons pat-down of Barnett. House felt the area between Barnett's buttocks and detected a hard rock-like substance a little smaller than a golf ball, which he *Page 3 
immediately recognized as crack cocaine. House communicated this fact to two other officers that had exited the van with him.
 {¶ 4} After Barnett was placed under arrest, House attempted to retrieve the cocaine, but because Barnett's jeans were so tight, one of the other officers unbuttoned Barnett's jeans and House placed his hand down between Barnett's jeans and his underwear, retrieving the plastic baggie containing the crack cocaine. House then gave Barnett hisMiranda rights, after which Barnett freely made statements to House, including admitting that the crack cocaine was his, and gave permission to search his apartment. In the subsequent search of the apartment, additional crack cocaine was found.
 {¶ 5} Barnett appeals the judgment of the trial court, setting forth four assignments of error that we will address together.
 First Assignment of Error {¶ 6} "Detective House conducted an unreasonable initial stop of Appellant was unreasonable [sic], and the subsequent arrest and search violated Appellant's Fourth Amendment rights under the United States Constitution." Second Assignment of Error
 {¶ 7} "As the initial investigative stop was not permitted, the contraband found on Appellant's person and in the apartment were [sic] `fruit of a poisonous tree.'"
 Third Assignment of Error {¶ 8} "Detective House exceeded the scope of a permissible pat down for weapons during the investigative stop, [sic] thus the warrantless search and subsequent seizure of contraband violated Appellant'sFourth Amendment rights under the United States Constitution." *Page 4 
 Fourth Assignment of Error {¶ 9} "As the warrantless search of Appellant was unreasonable and violated Appellant's Constitutional rights under the Fourth Amendment, contraband found in Appellant's apartment is `fruit of a poisonous tree.'"
 {¶ 10} The standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Vance (1994), 98 Ohio App.3d 56, 58-59,647 N.E.2d 851; State v. Ferguson, Defiance App. No. 4-01-34, 2002-Ohio-1763. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972. However, an appellate court makes an independent determination of the law as applied to the facts.Vance, 98 Ohio App.3d at 59. We decline Barnett's invitation that this court view the video recording of the proceedings and make our own determination of the facts herein, and we will instead apply the accepted standard of review.
 {¶ 11} In his first assignment of error, Barnett argues that the state had insufficient reasonable, articulable suspicion of criminal activity to have stopped him in the first instance, suggesting that it is unreasonable to conclude that a person merely waving at a vehicle in a high crime area is likely to be about to commit a crime. It is well accepted that "[t]he propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, citing State v. Freeman (1980),64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.
 {¶ 12} However, Detective House testified to fourteen years of experience as a Dayton Police officer, working primarily with the narcotics unit. He testified that the *Page 5 
Northcrest Apartment complex was a high drug and gun crime area and that he had made numerous arrests and participated in numerous search warrants for drugs and weapons at that location. House also testified that it is a common practice in areas where they have "open air drug sales," for sellers of drugs to contact potential purchasers by waving at vehicles as Barnett was doing.
 {¶ 13} When viewing Barnett's actions in light of Detective House's training, experience and familiarity with drug transactions generally and this area in particular, we find that Detective House had a sufficient reasonable, articulable suspicion that Barnett was committing or about to commit the offense of selling or offering to sell drugs. Therefore, House was justified in making an investigative stop of Barnett. We find no merit in Barnett's first assignment of error, and it is therefore overruled.
 {¶ 14} Because Barnett's second assignment of error is predicated upon his premise that the initial stop was illegal, and because we have found that it was not, his second assignment of error has no merit and is likewise overruled.
 {¶ 15} In his third assignment of error, Barnett argues that the pat-down for weapons exceeded the scope of a permissible Terry search when the area between his buttocks was searched by Detective House.
 {¶ 16} The United States Supreme Court recognized in Terry v.Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, that a police officer may make a limited search in order to protect himself and the public. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, he may conduct a limited protective search for concealed weapons. * * * The purpose of this limited search is not to discover *Page 6 
evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." Adams v. Williams (1972),407 U.S. 143, 145-146, 92 S.Ct. 1921, citing Terry at 24, 30.
 {¶ 17} The Supreme Court of Ohio has also addressed the issue of the scope of a permissible Terry pat-down. In State v. Evans (1993),67 Ohio St.3d 405, 414, 1993-Ohio-186, 618 N.E.2d 162, quoting Terry, the court pointed out that "[a] search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. * * * Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * * ." Terry, 392 U.S. at 25-26.
 {¶ 18} Applying that standard, the Supreme Court pointed out that "once the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing Terry as a pretext for a search for contraband."Evans, 67 Ohio St.3d at 414.
 {¶ 19} This court has addressed this concept before. In State v.Mackey, 141 Ohio App.3d 604, 752 N.E.2d 350, Judge Grady, concurring, noted that "this court has reviewed numerous cases wherein crack cocaine was located in a search that probed the area between a suspect's buttocks. The nagging question, which has yet to be answered, is *Page 7 
how weapons might reasonably be suspected to be there. Terry was concerned with a limited search of a suspect's outer garments, which the Court said `must surely be an annoying, frightening, and perhaps humiliating experience.' [Terry, 392 U.S.] at 25. Searches of these far more private areas of a suspect's person can only be even more annoying, frightening, and humiliating. Some more explicit justification of them is warranted, in the context of Terry."
 {¶ 20} Here the testimony reflected that Barnett's pants were so tight that they could not even pat down the area of his buttocks from outside his clothing, and that it was necessary to pull his pants up and unbutton them in order to get into the area to retrieve the baggie of cocaine. And, Detective House gave no testimony that would establish that he might expect to find a weapon secreted there. In fact, an abstract of cases in this district would indicate that it is, instead, very common that crack cocaine is kept in such location, rather than weapons. Therefore, there is no evidence before the court that would tend to establish that a search of that area was necessary to discover a hidden weapon.
 {¶ 21} Being mindful of the admonition in Mackey, the court holds that under the facts presented herein, where there is no testimony by the officer that would tend to establish the likelihood of finding weapons tucked between the cheeks of one's buttocks, the search of that area exceeded the scope of a permissible Terry patdown. Therefore, we sustain the third assignment of error.
 {¶ 22} Because the subsequent search of Barnett's apartment was the product of a Fourth Amendment violation, the subsequent search also must be suppressed as fruit of the poisonous tree under Wong Sun v.United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Therefore, the fourth assignment of error is sustained as well. *Page 8 
 {¶ 23} For the foregoing reasons, the judgment of the Montgomery County Common Pleas Court is hereby reversed and the cause is remanded to the trial court for further proceedings consistent herewith.
BROGAN, J. and GRADY, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1