[Cite as *State v. Yoder*, 2021-Ohio-496.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

RYAN CARL YODER

    Appellant

C.A. No.     29697

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 2019 06 1913

DECISION AND JOURNAL ENTRY

Dated: February 24, 2021

---

CALLAHAN, Judge.

{¶1} Appellant, Ryan Yoder, appeals an order of the Summit County Court of Common Pleas that denied his motion to suppress. This Court affirms.

I.

{¶2} On the evening of June 1, 2019, two Akron police officers approached Mr. Yoder on foot on 18th Street near Kenmore Boulevard. Concerned that Mr. Yoder was carrying a concealed firearm, the officers conducted a pat-down. Although they did not find a weapon on his person, the officers did identify what seemed to be a package of drugs in one of Mr. Yoder's pants pockets. The officers seized that object and determined that it was a package containing methamphetamine. The officers placed Mr. Yoder under arrest and, during a search of his backpack incident to that arrest, they found a firearm.

{¶3} Mr. Yoder was charged with aggravated possession of drugs in violation of R.C. 2925.11(A)/(C)(1)(b) and carrying a concealed weapon in violation of R.C. 2923.12(A)(2)/(F)(1).

He moved to suppress the drugs and the weapon, arguing that the officers did not have a reasonable, articulable suspicion that justified initiating a stop and that the officers were similarly unjustified in conducting a protective pat-down of his person; that one of the officers exceeded the permissible scope of a pat-down by manipulating Mr. Yoder's front pants pocket; that Mr. Yoder did not consent to be searched; and that he was questioned while in custody without being informed of his *Miranda* rights. The trial court denied the motion to suppress.

{¶4} Mr. Yoder pleaded no contest to possession of drugs and carrying a concealed weapon. The trial court found him guilty and sentenced him to eighteen months of community control on each count, to be served concurrently. Mr. Yoder filed this appeal.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT'S NOVEMBER 12, 2019, ORDER DENYING MR. YODER'S MOTION TO SUPPRESS ON THE BASIS THAT THE ARRESTING OFFICERS HAD A REASONABLE SUSPICION TO CONDUCT AN INVESTIGATORY STOP; DETAIN MR. YODER AGAINST HIS WILL; AND PERFORM A NON-CONSENSUAL "*TERRY* PAT DOWN" OF MR. YODER'S PERSON WAS CONTRARY TO LAW AND AGAINST THE WEIGHT OF THE EVIDENCE.

{¶5} In his first assignment of error, Mr. Yoder argues that the trial court erred by determining that the officers had a reasonable, articulable suspicion of criminal activity that justified a *Terry* stop and subsequent pat-down of Mr. Yoder's person. This Court does not agree.

{¶6} This Court's review of the trial court's ruling on the motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court acts as the trier of fact during a suppression hearing and is best equipped to evaluate the credibility of witnesses and resolve questions of fact. *Id.*; *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653 (4th Dist.1994).

Consequently, this Court accepts a trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8. Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo. *See id.* In other words, this Court then accepts the trial court's findings of fact as true and "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶7} As a general rule, the Fourth Amendment requires "that an official seizure of the person must be supported by probable cause, even if no formal arrest is made." *Michigan v. Summers*, 452 U.S. 692, 696 (1981). Law enforcement officers, however, have "narrow authority" to initiate limited intrusions on an individual's liberty that are based on less than probable cause. *Id.* at 698, citing *Terry v. Ohio*, 392 U.S. 1 (1968). Accordingly, a law enforcement officer may initiate a stop when the officer has a reasonable and articulable suspicion that the individual has been, is, or is about to engage in criminal activity. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, ¶ 19, quoting *United States v. Place*, 462 U.S. 696, 702 (1983).

{¶8} In justifying the stop, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* at 21. The touchstone of this analysis is whether the officer acted reasonably. *State v. Lozada*, 92 Ohio St.3d 74, 78 (2001). This question is evaluated in light of the totality of the circumstances surrounding the stop. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. This is because:

> The reasonable suspicion necessary for such a stop * * * eludes precise definition. Rather than involving a strict, inflexible standard, its determination involves a consideration of "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417 (1981). Under this analysis, "both the content of information

possessed by police and its degree of reliability" are relevant to the court's determination. *Alabama v. White*, 496 U.S. 325, 330 (1990).

*Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). Although no single factor is dispositive, the Supreme Court of Ohio has concluded that certain factors are relevant to the conclusion that a stop is justified: the location of the incident; the experience, training, and knowledge of the officer; the conduct or appearance of the subject; and the surrounding circumstances. *State v. White*, 9th Dist. Wayne No. 05CA0060, 2006-Ohio-2966, ¶ 16, citing *State v. Bobo,* 37 Ohio St.3d 177, 178-179 (1988).

{¶9}     Mr. Yoder has not challenged the trial court's findings of fact, so this Court accepts them as true and reviews the trial court's legal conclusions de novo.[1] *See Burnside* at ¶ 8. With respect to the officers' decision to stop Mr. Yoder, the trial court found that Officer Anthony Trimble and Officer Mark Sember were patrolling the area of 18th Street and Kenmore Boulevard on the date in question at approximately 8:00 p.m. The trial court noted that Officer Trimble testified that this location was the scene of many "purse snatchings, armed robberies and hand-to-hand drug transactions, some involving weapons and handguns[]" and that some of the local businesses were open at the time. The trial court found that Officer Trimble and his partner noticed Mr. Yoder walking eastbound on Kenmore Boulevard as they drove in the opposite direction; as they made eye contact with Mr. Yoder, he split off from a companion and turned onto 18th Street.

{¶10}   With regard to Mr. Yoder's appearance, the trial court noted Officer Trimble's testimony that he wore a hooded sweatshirt "that was pulled tightly over his head[]" and clutched

---

[1] Mr. Yoder articulated his assignments of error in terms of manifest weight, but the argument in support of his assignments of error is framed in terms of the standard of review set forth above. He has not argued, within that framework, that the trial court's findings of fact underlying his first assignment of error are not supported by competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

the waistband of his sweatshirt "as though he was trying to 'secure something which was a huge sign * * * that someone has a weapon' based on [Officer Trimble's] training and experience." The trial court also observed that according to Officer Trimble's testimony, "people get nervous when carrying a firearm and tend to clutch that area of their person." The trial court found that when the officers approached Mr. Yoder, he was "'blading,' or turning his body sideways away from the officer instead of looking at [Officer Trimble] face-to-face." According to the trial court's findings of fact, Officer Trimble acknowledged that the incident occurred while it was still daylight; the officer recalled that it was humid, but did not remember the temperature. Officer Trimble also acknowledged that Mr. Yoder was on a public sidewalk and made no attempt to evade the officers.

{¶11} This Court agrees that the totality of the circumstances support the trial court's conclusion that the officers had a reasonable, articulable suspicion of criminal activity that justified their decision to stop Mr. Yoder. As Officer Trimble testified, the incident occurred in an area known for a high level of crime—particularly crimes involving firearms. They also encountered Mr. Yoder on a street where businesses were located and at a time when those businesses remained open. Mr. Yoder's appearance and behavior led the officers to conclude that he might be carrying a concealed firearm—a concern of note given the location of the incident. Officer Trimble testified that Mr. Yoder was wearing a hooded sweatshirt pulled tight around his face, which seemed unusual given the weather conditions. He also noted that when the officers made eye contact with Mr. Yoder, he abruptly split away from his companion and turned down a different street. Based on his training and experience, Officer Trimble identified the position of Mr. Yoder's hands—clutching the pocket area of his sweatshirt as if to conceal something—as an indication that he may have been carrying a firearm. He also testified that Mr. Yoder's stance when the officers approached furthered his suspicion that Mr. Yoder was concealing a firearm in the pocket.

{¶12} These facts, considered in the totality of the surrounding circumstances, demonstrate that given the location of the incident in an area known for gun-related crime; Mr. Yoder's appearance and conduct when the officers approached; and Officer Trimble's experience, training, and knowledge, Officer Trimble had a reasonable, articulable suspicion that justified stopping Mr. Yoder. *See Bobo,* 37 Ohio St.3d at 178-179.

{¶13} Mr. Yoder's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT'S NOVEMBER 12, 2019, ORDER DENYING MR. YODER'S MOTION TO SUPPRESS ON THE BASIS THAT THE ARRESTING OFFICERS LAWFULLY CONDUCTED A NON-CONSENSUAL "TERRY PAT DOWN" OF MR. YODER'S PERSON WAS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} In his second assignment of error, Mr. Yoder argues that the trial court erred by determining that the drugs found in Mr. Yoder's pants pocket were seized in the course of a lawful pat-down. This Court does not agree.

{¶15} A law enforcement officer may conduct a limited protective search of a detainee for concealed weapons when the officer reasonably believes that "'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *.'" *State v. Evans*, 67 Ohio St.3d 405, 408 (1993), quoting *Terry*, 392 U.S. at 24. "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." *Bobo*, 37 Ohio St.3d at paragraph two of the syllabus. The purpose of this limited search is not to discover evidence of a crime, but to ensure that officers may conduct their investigation without the threat of violence. *Evans* at 408, quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972). As such, the scope of a pat-down is limited to "an intrusion

reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of [a] police officer." *Terry* at 29. "[O]nce the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop." *Evans* at 414.

{¶16} During the course of a *Terry* search, however, an officer may seize an item that is immediately identifiable by touch by its contour or mass as contraband under the "plain feel" exception to the warrant requirement. *State v. Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428, ¶ 19, quoting *Minnesota v. Dickerson*, 508 U.S. 366, 370, 375-376 (1993). "The officer, however, is limited to detecting the object's incriminating character by merely patting the exterior clothing without manipulating the object to identify it as contraband." *State v. Morton*, 9th Dist. Summit No. 25117, 2010-Ohio-3582, ¶ 20, citing *State v. Allen*, 2d Dist. Montgomery No. 22663, 2009-Ohio-1280, ¶ 46. When an officer lawfully feels an object on the person of the subject but the character of the object is not immediately apparent, further manipulation constitutes "a further search, one not authorized by *Terry* or by any exception to the warrant requirement." *Dickerson* at 379.

{¶17} The trial court found that Officer Trimble commenced the pat-down in the area of Mr. Yoder's waistband, then proceeded to pat down his leg. The trial court found that "[w]hen the officer patted down [Mr. Yoder's] pants leg, he felt a 'bulge' that he realized was not a weapon but based upon his training and experience, believed it to be either marijuana or a chunk of 'meth.'" The trial court also noted that in response to questioning from the bench, Officer Trimble explained that he believed this to be the case "based on the more than 150 times that he has recovered these items from suspects."

{¶18} In effect, Mr. Yoder's assignment of error argues that the trial court's findings of fact are not supported by competent, credible evidence. Specifically, he argues that Officer

Trimble did not discover the drugs during his *Terry* pat-down, but during a second search during which the officer manipulated an object to determine what it might be. Consequently, he appears to maintain that the trial court's unsupported findings of fact led to an incorrect application of the law.

{¶19} Video of the incident from a body-worn camera, however, is consistent with the trial court's findings of fact. That video depicts a single pat-down that commenced in the area of Mr. Yoder's waistband, was interrupted when Mr. Yoder twisted to the side and removed his backpack, and resumed at that point. At the moment when Officer Trimble discovered an object in Mr. Yoder's pocket, the video demonstrates that the officer quickly passed his hand over and around the object in a manner "reasonably designed to discover" whether the object was a weapon. *See Terry*, 329 U.S. at 29. As the trial court found, Officer Trimble immediately stated—contemporaneous with that action—that he believed Mr. Yoder had drugs in his pocket. The evidence from the video is consistent with Officer Trimble's testimony, in which he affirmed that an officer cannot manipulate an object to determine whether it is contraband and testified that it was immediately apparent to him during the pat-down that the object in Mr. Yoder's pocket was drugs. As the trial court concluded, Officer Trimble lawfully patted down Mr. Yoder's outer clothing and felt "an object whose contour or mass [made] its identity immediately apparent" as contraband. *See Dickerson*, 508 U.S. at 375. There was therefore no invasion of Mr. Yoder's privacy beyond that authorized by Officer Trimble's search for weapons. *See Id*.

{¶20} Mr. Yoder's second assignment of error is overruled.

### III.

{¶21} Mr. Yoder's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.