[Cite as *State v. Montague*, 2013-Ohio-811.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                           :

                                  :         Appellate Case No. 25168

       Plaintiff-Appellee        :

                                    :         Trial Court Case No.   2011-CR-2500

v.                                    :

                                    :

DONTRELL L. MONTAGUE     :         (Criminal Appeal from

                                    :         Common Pleas Court)

       Defendant-Appellant    :

                                    :

                     . . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of March, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOSEPH R. HABBYSHAW, Atty. Reg. #0089530, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P. O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

PAMELA L. PINCHOT, Atty. Reg. #0071648, 7960 Clyo Road, Dayton, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, P.J.

{¶ 1}   Defendant-appellant Dontrell Montague appeals from his conviction and sentence for Possession of Crack Cocaine in an amount less than one gram.   Montague

contends that the trial court erred in overruling his motion to suppress evidence, because the police officer who discovered the crack cocaine did not have reasonable grounds to conduct a pat-down, and the extent of the pat-down exceeded permissible boundaries.

{¶ 2}     We conclude that the trial court did not err in overruling Montague's motion to suppress.   Accordingly, the judgment of the trial court is Affirmed.

## I. Montague Is Recognized in a High Crime Area
## as Someone Involved with Drugs

{¶ 3}     In July 2011, Officer Brian Shiverdecker of the Montgomery County Sheriff's Office pulled over a Chevrolet Blazer for twice failing to use a turn signal in Harrison Township in an area known for narcotics, weapons trafficking, and high gang involvement. Shiverdecker approached the Blazer and asked the driver and the front-seat passenger, Montague, for identification.   Shiverdecker recognized Montague as "Q," an alias used by Montague during his involvement with several other narcotics areas within Harrison Township.

{¶ 4}     Shiverdecker returned to his police cruiser and looked up information pertaining to the driver and Montague on the police cruiser's computer system.   The information on the system indicated that Montague and the driver had been evicted from a motel by the owner for suspicion of selling narcotics.   Furthermore, the computer system showed several warrants for Montague out of Clinton County for drugs, but these warrants were outside of Shiverdecker's pickup radius, and he was not authorized to arrest Montague on these warrants.   Shiverdecker requested that an additional officer be dispatched to his

location.

{¶ 5} Shiverdecker walked back to the Blazer and asked the driver if there were any guns, knives, or illegal narcotics in the vehicle. The driver responded "no." Shiverdecker requested permission to search the vehicle, and the driver consented. The driver was asked to get out of the vehicle, and Shiverdecker frisked him for weapons. Shiverdecker then asked Montague to step out of the vehicle, and frisked him for weapons. As Shiverdecker conducted his pat-down up the leg and through the groin area, he felt a knot in Montague's buttocks. Based on his experience, Shiverdecker recognized the foreign object as likely to be illegal drugs. He walked Montague back to the police cruiser and had Montague sit in the back seat.

{¶ 6} Shiverdecker told Montague that he believed Montague was hiding narcotics. Montague offered to remove the drugs from his pants. Montague removed a baggie containing crack cocaine. Shiverdecker arrested Montague.

## II. Course of the Proceedings

{¶ 7} Montague was charged by indictment with one count of Possession of Crack Cocaine in an amount of less than one gram, in violation of R.C. 2925.11(A). Montague moved to suppress the crack cocaine as evidence, contending that it was obtained as the result of an unlawful search and seizure. After a hearing, the trial court overruled Montague's motion to suppress.

{¶ 8} Montague pled no contest to one count of Possession of Crack Cocaine in an amount less than one gram. The trial court found him guilty and sentenced him to five years

of community control sanctions and a suspension of his driver's license for six months. From the judgment of the trial court, Montague appeals.

### III. The Police Officer Had Reasonable, Individualized Suspicion
### that Montague Might Have Been Armed

{¶ 9}    Montague's First Assignment of Error states:

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AS THE MONTGOMERY COUNTY SHERIFF'S OFFICER DID NOT HAVE REASONABLE GROUNDS TO PAT-DOWN THE DEFENDANT-APPELLANT AND, THEREFORE, VIOLATED THE RIGHTS GUARANTEED TO THE DEFENDANT-APPELLANT BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶ 10}   "In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. * * * However, 'the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard.'" *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 13.

{¶ 11}   The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and temporarily detain

individuals in order to investigate possible criminal activity, if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. A police officer may lawfully stop a vehicle if he has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *State v. Buckner*, 2d Dist. Montgomery No. 21892, 2007-Ohio-4329, ¶ 8.

{¶ 12} We agree with the trial court that Officer Shiverdecker was entitled to stop the vehicle in which Montague was a passenger. Shiverdecker observed the driver of the Blazer commit two traffic violations when the driver failed to use his turn signal. Montague concedes that the traffic stop was justified. The next issue is whether Shiverdecker's pat-down of Montague was lawful.

{¶ 13} "Authority to conduct a patdown search for weapons does not automatically flow from a lawful stop[.]" *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16. When a lawful stop is made, an officer may conduct a limited search for weapons if the officer reasonably believes the suspect may be armed. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). To justify a pat-down search, an officer must point to specific, articulable facts that create a "reasonable individualized suspicion that the suspect is armed and dangerous[.]" *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 18. A suspect's location in a high crime area alone will not justify a weapons frisk. *Id.*

{¶ 14} "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the

belief that his safety or that of others was in danger." *Terry* at 27. The totality of the circumstances must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991) (Citations omitted.)

{¶ 15} "Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon. 'The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed.' " *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 17, quoting *State v. Evans*, 67 Ohio St.3d 405, 413, 618 N.E.2d 162 (1993).

{¶ 16} The trial court found that Shiverdecker's pat-down search of Montague was lawful. The trial court explained its reasoning:

So, with a consent for search of the vehicle given by the operator of the vehicle, the officer had a right to remove the Defendant and frisk him for his own safety. The Court finds that in this case and lending to that – making that officer's right to frisk the Defendant, the officer knew the Defendant. In fact, knew his street name from previous drug-related encounters which, under State versus Ferranti, certainly may not be enough to justify the frisk, but together with finding on an in-car computer numerous 2009 arrests and warrants and a conviction, I think, for drug trafficking, together with a recent eviction for drug trafficking, which is not a conviction, certainly, but further indication of Defendant's involvement in drug activity. The stop itself was in an area known to officers of high drug and crime activity. That eviction I spoke of

was at a known hub for prostitution, drugs, and weapons. The officer was initially, at the time of the frisk, outnumbered by defendants two to one.

> The Court finds that, factually and under the totality of these facts, that Officer Shiverdecker did not single out a random subject for a fishing expedition, but was able to articulate facts establishing a reasonable suspicion that he might be in danger in this setting, acting alone in searching the vehicle pursuant to the search.

> The Defendant's motion to suppress is, accordingly, overruled * * *.

Tr. 43-44.

**{¶ 17}** The trial court's findings are supported by competent, credible evidence – the testimony of Officer Shiverdecker, who testified as follows regarding why he decided to pat down Montague:

> Q. As a result of getting consent to search that vehicle, what did you do?

> A. I had Mr. Fields step from the vehicle, conducted an outer garment pat-down of him for any weapons or, you know, for my safety and his. I had Mr. Fields stand back to the passenger side of my vehicle and made contact with Mr. Montague.

> Q. When you say you patted him down for weapons for your safety and his; is that in response to learning all this information about the drug trafficking activity and warrants and such?

A.   Correct.   With where the vehicle was seen, with the warrants out of Clinton County for the possession of narcotics, the prior intel of the suspicion of him being – selling narcotics out of the motel, yes.

Q.   And when you say where the vehicle was seen; is that where you're talking about that Nottingham area of –

A.   Yes, the Nottingham area.

Q.   And at this point, when you are removing the driver and conducting – and getting ready to conduct this consent search, is there any other officer on scene?

A.   Not at that time.

Q.   So it's just you dealing with two people in this vehicle?

A.   Correct.

Q.   Where you know a history of suspected trafficking in drugs, history of possession of drugs, warrants, and coming from an area where you are very familiar with drugs and guns?

A.   Correct.

* * *

Q.   And again, you were going – you said you were going to conduct a pat-down of the Defendant.   Why?   If you can articulate that again for us, please?

A.   Typically   with   drugs   comes   weapons.   The   area   of   East Nottingham where they were going through is an area where we've had prior

shootings, an abundance of narcotics sales. And I've found in my past dealings that a lot of the times when you find narcotics, there's a good chance that you're going to find weapons with it also.

Q. Did you also have a concern because you were dealing with two people and you're a single officer?

A. Correct. Tr. 12-15.

{¶ 18} Officer Shiverdecker was faced with a number of individual circumstances that, taken together, created individualized suspicion that Montague might have been armed. Shiverdecker was making a traffic stop in a high crime area with an individual whom he recognized as being involved with illegal narcotics. Shiverdecker then obtained further information that Montague had warrants out on him for illegal narcotics. Shiverdecker testified that in his experience patrolling that particular area where the traffic stop occurred, there often is a correlation between illegal narcotics and the presence of weapons. Based on the totality of circumstances, we conclude that Shiverdecker had reasonable, individualized suspicion that Montague might have been armed. Consequently, the pat-down of Montague was lawful.

{¶ 19} Montague's First Assignment of Error is overruled.

## IV. Officer Shiverdecker's Pat-down of Montague
## Did Not Exceed Permissible Boundaries

{¶ 20} Montague's Second Assignment of Error states:

THE TRIAL COURT ERRED IN OVERRULING THE

DEFENDANT-APPELLANT'S MOTION TO SUPPRESS AS THE MONTGOMERY COUNTY SHERIFF OFFICER'S PAT DOWN OF THE DEFENDANT-APPELLANT EXCEEDED PERMISSIBLE BOUNDARIES AND, THEREFORE, VIOLATED THE RIGHTS GUARANTEED TO THE DEFENDANT-APPELLANT BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

**{¶ 21}** A weapons frisk under *Terry* "is justified solely by 'the protection of the police officer or others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.'" *State v. Woodward*, 2d Dist. Montgomery No. 18869, 2002-Ohio-942, ¶ 14, quoting *Terry*, 392 U.S. at 29. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *State v. Dickerson*, 2d Dist. Montgomery No. 22452, 2008-Ohio-6544, ¶ 20, quoting *Adams v. Williams*, 407 U.S. 143, 145-146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

**{¶ 22}** Montague claims that the pat-down by Shiverdecker exceeded the permissible scope of a pat-down for weapons. Specifically, Montague contends that "Shiverdecker exceeded the permissible scope of a Terry frisk by not just patting-down the defendant-appellant, but by sticking his hand between the defendant's buttocks." Brief, p. 10. "We have, on several occasions, expressed concern over the intrusiveness of a search of the area between an individual's buttocks." *State v. Allen*, 2d Dist. Montgomery No. 22663, ¶ 45 (Citations omitted.)

**{¶ 23}** Officer Shiverdecker testified that in his experience he has found weapons in the lower groin and buttocks area of suspects. Furthermore, he described in detail the pat-down he conducted on Montague. He discovered the illegal drugs when he slid his hand up Montague's leg and through the groin area. Under the particular facts of this case, we conclude that Shiverdecker did not exceed the permissible scope of a lawful pat-down.

**{¶ 24}** Montague's Second Assignment of Error is overruled.

## V. Conclusion

**{¶ 25}** Both of Montague's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Joseph R. Habbyshaw
Pamela L. Pinchot
Hon. Gregory F. Singer

Case Name:    *State of Ohio v. Dontrell L. Montague*
Case No:         Montgomery App. No. 25168
Panel:            Fain, Froelich, Welbaum
Author:          Mike Fain
Summary: