[Cite as *State v. Henderson*, 2013-Ohio-1369.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25184 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-3835 |
| v. | : | |
| | : | |
| DONTAY HENDERSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 5th day of April, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. #0076627, Flanagan, Lieberman, Hoffman & Swaim, 15 West fourth Street, Suite 100, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

  **{¶ 1}**  Dontay Henderson appeals the trial court's overruling of his motion to

suppress two baggies of illegal drugs and statements admitting that he bought the drugs. Henderson discarded the baggies while fleeing from police after an attempted frisk, and he made the statements after he was caught and arrested. Because police had a lawful basis on which to stop and frisk Henderson, neither the drugs nor the statements are "fruit of the poisonous tree." We affirm.

{¶ 2} In September 2011, Henderson was indicted for possessing less than 5 grams of cocaine and for possessing heroin. He moved to suppress "all evidence obtained from defendant as a result of the detention of the defendant * * * [and] all evidence obtained as a result of information obtained from defendant as a result of the stop of defendant." At the hearing on the motion, the only testimony came from Officer Justin Saunders, the City of Dayton police officer who arrested Henderson. He testified that, on the night in question, he and his partner were on routine patrol in Dayton in their marked cruiser. They were stopped at a stop sign waiting for a break in traffic so they could turn onto East Third Street. On the corner was a well-lit Shell service station. Officer Saunders watched a man, who he later learned was Henderson, walk out of the station's store and up to the driver's side of a black car, parked nearby. Henderson leaned over and reached his hand into the car through the driver's window. Then he looked up and saw the cruiser. Henderson immediately retracted his hand and walked away from the car, which sped off.

{¶ 3} Officer Saunders testified that, based on his experience, he believed a hand-to-hand drug transaction had just taken place. He said that the area around the Shell station is "heavily polluted with drugs." (Suppression Hearing Tr. 7). Saunders said that he had been working in that area for a year and that he had made 6-12 drug-related arrests there,

including arrests for drug transactions. Saunders also testified that he has seen around 12 hand-to-hand drug transactions. Such a transaction, he said, often involves a pedestrian and a vehicle and is done very discreetly and very quickly. Officer Saunders also said that what contributed to his thinking that a drug transaction had just occurred was how Henderson and the car reacted immediately after Henderson saw the cruiser.

{¶ 4} Saunders, in his cruiser, followed Henderson into the alley behind the Shell station. Saunders stopped the cruiser, got out, and called out that he was a police officer. Saunders asked Henderson if he had any ID on him. Henderson stopped and replied, "I think I do." Officer Saunders testified that he was worried that Henderson might be carrying a weapon. "There's also a lot of gun–gun activity [in the area] * * *," (*id.*), Saunders said, adding that he had made three gun-related arrests. Saunders also said that drug transactions, in particular, raise concerns about weapons, because it is not uncommon for people involved in drug activity to carry them. So Saunders decided to frisk Henderson for weapons.

{¶ 5} Saunders began the frisk by putting his hand on Henderson's right pants pocket. Suddenly, Henderson took off running. Officer Saunders gave chase, shouting at him to stop. During the pursuit, Saunders saw Henderson reach into his right pocket. (From the testimony it isn't clear whether this is his right pants pocket or the right pocket of the jacket that Saunders testified Henderson was wearing.) Worried that Henderson was reaching for a gun, Saunders drew his own gun. Saunders then saw Henderson take his hand out of the pocket and throw two baggies onto the ground. Saunders continued to chase Henderson until, not far from where he had throw the baggies, Henderson tripped on a curb and fell. Officer Saunders grabbed him and placed him under arrest. Saunders then retrieved the two baggies,

which he believed contained illegal drugs. Officer Saunders put Henderson in the back of the cruiser and read him his *Miranda* rights. Henderson then admitted that he had bought the two baggies of drugs.

**{¶ 6}** The trial court found that the facts were as described by Officer Saunders in his testimony and overruled the motion to suppress. Henderson pleaded no contest to the two possession charges, and the trial court sentenced him to community control.

**{¶ 7}** Henderson appealed.

**{¶ 8}** The sole assignment of error alleges that the trial court erred in overruling the motion to suppress. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. A reviewing court must accept as true the trial court's adequately supported findings of fact. *Id*. But the reviewing court must "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*. Henderson does not dispute any of the trial court's factual findings. Rather, he argues that the stop was unlawful so both the baggies and his statements must be excluded from evidence as "fruit of the poisonous tree."

**{¶ 9}** The trial court overruled Henderson's suppression motion based on our decision in *State v. Wynn*, 2d Dist. Montgomery No. 24253, 2011-Ohio-1832, affirming the overruling of a motion to suppress based on the finding that the defendant had voluntarily abandoned the evidence. We agree that Henderson's motion should be overruled, but it is not because he voluntarily abandoned the evidence. Given Officer Saunders's testimony, we conclude that the evidence resulted from a lawful stop and frisk.

**The Stop**

**{¶ 10}** A police officer may conduct an investigative stop, a *Terry* stop, if the officer's observations "lead him reasonably to suspect that a particular person's behavior is criminal * * *." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 13, citing *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[T]he officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991), quoting *Terry* at 21. This standard is objective: "'[W]ould the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'" *Id.*, quoting *Terry* at 21-22. The facts considered should be drawn from the "totality of the surrounding circumstances[,] * * * viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." (Citations omitted.) *Id.* And a reviewing court "must give due weight to [the officer's] experience and training and view the evidence as it would be understood by those in law enforcement." (Citations omitted.) *Id.* at 88.

**{¶ 11}** In this case, three facts in particular must be considered. One is the area's reputation for drug activity. *Compare id.* (saying that "[a]n area's reputation for criminal activity is an articulable fact which is a part of the totality of circumstances surrounding a stop to investigate suspicious behavior"). Another fact is Henderson's and the black car's immediate flight after Henderson saw the police cruiser. *Compare State v. Chadwell*, 182 Ohio App.3d 256, 2009-Ohio-1630, 912 N.E.2d 618, ¶ 26 (2d Dist.) (saying that

"'[u]nprovoked flight upon seeing police officers is a relevant consideration in determining whether the totality of the facts and circumstances are sufficiently suspicious to justify a *Terry* stop,'" quoting *State v. Jordan*, 2d Dist. Clark No. 05CA04, 2006-Ohio-1813, ¶ 22, citing *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). "'While such [behavior] is not necessarily indicative of criminal behavior, and can be consistent with innocent conduct, *Terry* recognized that officers may briefly detain individuals to resolve ambiguity in their conduct.'" *Id.*, quoting *Jordan* at *¶* 22, citing *Wardlow*. The last fact is Henderson's sudden withdrawal of his hand from inside the car after he saw the cruiser. *Compare State v. Agee*, 8th Dist. Cuyahoga No. 94035, 2010-Ohio-5074, *¶* 23 (saying that "'nervous, evasive behavior' constitutes a 'pertinent factor' in determining the existence of reasonable suspicion," quoting *State v. Davis*, 8th Dist. Cuyahoga No. 89530, 2008-Ohio-322, *¶* 12).

**{¶ 12}** These three facts plus Officer Saunders's experience with hand-to-hand drug transactions combined to create reasonable suspicion that something criminal had just occurred. *Compare State v. Harris*, 2d Dist. Montgomery No. 22267, 2008-Ohio-3871 (holding the same where a police officer testified that, in a high-drug area and based on his experience with hand-to-hand drug transactions, when he saw the defendant get into a parked vehicle, saw movement inside, and saw the defendant exit the vehicle less than a minute later, he believed that a drug transaction had occurred, even though he could not see anything change hands). Therefore the stop was lawful.

### The (Attempted) Frisk

**{¶ 13}** Officer Saunders's frisk was lawful too. "Authority to conduct a patdown

search for weapons does not automatically flow from a lawful stop." *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16. An officer may search a lawfully stopped suspect for weapons "if the officer reasonably believes the suspect may be armed." *State v. Montague*, 2d Dist. Montgomery No. 25160, 2013-Ohio-811, ¶ 13, citing *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993). It is usually reasonable for an officer to believe that a person suspected of committing a drug crime is armed. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 17 ("Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon. 'The right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed.'"), quoting *Evans* at 413. Officer Saunders suspected Henderson of committing a drug crime, and nothing made Saunders's belief that Henderson might be armed unreasonable.

{¶ 14}   The two baggies of drugs in Henderson's pocket and his statements are not "fruit of the poisonous tree." They are fruit of a lawful stop and frisk. For this reason, the overruling of Henderson's motion to suppress was not erroneous.

{¶ 15}   The sole assignment of error is overruled.

{¶ 16}   The trial court's order overruling the motion to suppress is affirmed.

. . . . . . . . . . . . .

FAIN, P.J. and FROELICH, J., concur.


Copies mailed to:
Mathias H. Heck
Michele D. Phipps

Candi S. Rambo
Hon. Gregory F. Singer