[Cite as *State v. Gill*, 2014-Ohio-4309.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-A-0014** |
| JULIAN GILL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 00014.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

Marie Lane, Ashtabula County Public Defender, Inc., 4817 State Road, Suite #202, Ashtabula, OH 44004-6927 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the sentencing judgment in a criminal action before the Ashtabula County Court of Common Pleas. After entering a no contest plea, appellant, Julian Gill, was found guilty of carrying a concealed weapon and sentenced to an eighteen month prison term. In seeking reversal, appellant contends that his motion to suppress the weapon should have been granted because of an unlawful search. For the following reasons, the judgment is affirmed.

{¶2} On December 29, 2011, the Ashtabula County Sheriff's Office received a call for assistance from a K-Mart store in a local shopping mall. Members of the store's loss prevention department reported that Lauren McCaleb was just seen both inside the store and at other locations in the mall. As of that date, the sheriff's office was aware of a number of outstanding warrants for McCaleb's arrest. Some of the warrants stemmed from alleged instances in which McCaleb stole merchandise from stores in the mall. As part of these prior instances, McCaleb escaped apprehension by running from the mall and getting into a nearby "get-away" vehicle.

{¶3} Deputy Rick Schupska was one of two officers dispatched to apprehend McCaleb. While going to the scene, Deputy Schupska received a second report from his lieutenant that McCaleb was believed to be carrying a firearm. At the mall, Deputy Schupska met with the second officer, who stated that he would enter the mall and try to find McCaleb on foot. In the meantime, Deputy Schupska was to continue to patrol the mall parking lots in his cruiser.

{¶4} While circling the mall, Deputy Schupska continued to receive new reports from the second officer inside the mall. The first report was that the second officer was chasing McCaleb through the mall. The second report revealed that McCaleb had exited the mall by K-Mart and entered a blue vehicle.

{¶5} After arriving in the K-Mart parking lot, Deputy Schupska saw that, despite being on foot, the second officer was able to stop the blue vehicle and force McCaleb to exit the front passenger seat. As Deputy Schupska parked his cruiser behind the blue vehicle, the second officer was handcuffing McCaleb beside the right front door. Since McCaleb was under control, Deputy Schupska walked to the left side of the blue vehicle and saw that there was a male sitting in the driver's seat and a female in the back seat.

2

In response to Deputy Schupska's initial question, the male produced a driver's license identifying himself.

{¶6} Once the identification process was finished, Deputy Schupska instructed appellant to exit his vehicle. As appellant was beginning to comply, Deputy Schupska asked him whether he had any "knives, needles, or weapons" on his person. Appellant replied that he had a firearm in the right front pocket of his pants. Upon conducting an immediate search of appellant's pants, Deputy Schupska found the loaded firearm and placed him under arrest.

{¶7} Appellant was initially charged with two felony offenses in the Ashtabula Municipal Court. During the preliminary hearing, the state called Deputy Schupska as its sole witness. After providing a basic description of the events leading to appellant's arrest during his direct examination, Deputy Schupska testified on cross-examination that, by the time he instructed appellant to exit the blue vehicle, he had already formed the intent to "search" appellant. However, on re-direct, he stated that the sole purpose of the planned search was to ensure the safety of himself and the second officer.

{¶8} Based upon the deputy's testimony, the municipal court found that there was probable cause to bind appellant over to the common pleas court. On February 17, 2012, appellant was indicted on one count of having a weapon while under a disability, a third-degree felony under R.C. 2923.13(A)(2), and one count of carrying a concealed weapon, a fourth-degree felony under R.C. 2923.13(A)(1).

{¶9} After entering an initial plea of not guilty, appellant moved the trial court to suppress the firearm that was seized during the search of his person. As the first basis for the motion, he asserted that Deputy Schupska did not intend to simply pat him down when the deputy told him to exit his vehicle, but instead had already decided to conduct

3

a full search of his person. Appellant further stated that a full search was illegal under the Fourth Amendment because Deputy Schupska did not have a warrant or probable cause to justify the search. As an alternative reason to suppress, he argued that, even if the deputy only intended to conduct a pat-down search, the seizure of the firearm was still illegal because the deputy did not have a reasonable suspicion of criminal behavior on his part.

{¶10} Following the submission of the state's written response, an abbreviated evidentiary hearing was held on appellant's motion. Similar to the preliminary hearing before the municipal court, Deputy Schupska was the sole witness at the suppression hearing. During his direct examination, the deputy stated that the sole reason he asked appellant to exit his vehicle was to check him for weapons, thereby ensuring that there was no immediate threat to the two officers' safety. However, on cross-examination, the deputy admitted that, in his testimony during the preliminary hearing, he did state that he intended to "search" appellant once appellant left his vehicle.

{¶11} In holding that the seizure of the firearm was permissible under the Fourth Amendment, the trial court first concluded that, irrespective of the terminology Deputy Schupska used in testifying, his "initial encounter with [appellant] can only properly be characterized as an investigative *Terry* stop and pat down, and not a search of [appellant's] person." (Emphasis sic.) Second, the court concluded that the decision to have appellant exit the vehicle was justified because the facts of the situation supported a reasonable suspicion that appellant might be armed. Accordingly, appellant's motion to suppress was denied.

{¶12} Following a seventeen-month delay caused by appellant's absence from the jurisdiction, he agreed to enter a new plea of no contest to carrying a concealed

4

weapon. In consideration, the state agreed to dismiss the weapon while under a disability charge. After engaging appellant in the required colloquy under Crim.R. 11, the trial court accepted the plea and found him guilty of carrying a concealed weapon.

{¶13} Upon conducting a separate sentencing hearing, the trial court issued its final judgment ordering appellant to serve an eighteen-month prison term. In appealing his conviction and sentence, appellant raises one assignment of error for review:

{¶14} "The trial court committed error when it overruled Appellant's motion to suppress."

{¶15} In asserting that the firearm Deputy Schupska found on his person should have been suppressed, appellant focuses primarily upon the trial court's conclusion that he was only subject to a momentary pat down. Citing the deputy's testimony during the preliminary hearing as to his intent following the initial "identification" phase, appellant argues that the trial court should have found that he was to be subject to a "full" search even if he had not informed the deputy of the presence of the firearm. Based upon this, he further contends that such a search was not permissible because the deputy lacked probable cause to proceed.

{¶16} As a general proposition, a police search is deemed per se unreasonable under the Fourth Amendment unless there has been prior judicial approval. *Wickliffe v. Hancock*, 11th Dist. Lake No. 2008-L-174, 2009-Ohio-4257, ¶12, quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). However, certain narrow exceptions to the foregoing principle have been recognized. "One such exception * * * is a limited protective search for concealed weapons conducted within the scope of a justified investigatory stop. *State v. Bobo* (1988), 37 Ohio St.3d 177, 180, * * *." *Id.*

{¶17} "Although police must generally secure a warrant to engage in a search

5

and make a seizure, that procedure cannot be followed where circumstances merit swift action based upon the 'on-the-spot' observations of an officer on the street. * * * Such stops fall short of a traditional arrest and therefore do not require probable cause. * * * Under such circumstances, the balance between public interest and the individual's right to personal security tilts in favor of a standard less than probable cause. * * * Therefore, the Fourth Amendment permits an investigatory stop where the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot. * * *." (Citations omitted.) *State v. King*, 11th Dist. Ashtabula No. 2003-A-0018, 2004-Ohio-2598, ¶9.

{¶18} In some instances, the authority to conduct an investigatory stop will also enable the police officer to perform a pat-down search of the suspect; but the authority to frisk does not automatically flow from the authority to momentarily detain. *State v. Henderson*, 2nd Dist. Montgomery No. 25184, 2013-Ohio-1369, ¶13. An officer will only be permitted to pat the suspect down for weapons when the underlying facts support a reasonable belief that the suspect could be armed. *Id.*, citing *State v. Evans*, 67 Ohio St.3d 405, 408 (1993). The scope of the frisk must be limited to those steps necessary to discover weapons that could be employed to harm the officer or other people in the area. *State v. Walker*, 10th Dist. Franklin No. 97AP09-1219, 1998 Ohio App. LEXIS 3466, *10, quoting *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶19} The standard for determining the propriety of an officer's actions during an investigatory stop is objective in nature: "'[W]ould the facts available to the officer at the moment of the seizure or search "warrant a man of reasonable caution in the belief" that the action was appropriate?'" *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991), quoting *Terry* at 21-22. To the extent that the *Terry* standard is predicated upon the facts which

6

are known by the officer at the time of the intrusion, it is similar in nature to other tests used to judge the constitutionality of searches and seizures: "Fourth Amendment determinations, which include *Terry* stops, are reviewed under an 'objective standard' and not under the law enforcement officer's subjective intent." *State v. Smith*, 10th Dist. Franklin No. 04AP-859, 2005-Ohio-2560, ¶28, citing *Whren v. United States*, 517 U.S. 806, 813 (1996).

{¶20} In claiming that he was subject to a full search that had to be based upon probable cause, appellant cites Deputy Schupska's testimony regarding his intentions when he instructed appellant to exit his vehicle. However, pursuant to the governing precedent, the deputy's subjective intent is irrelevant to determining the type of intrusion that occurred, i.e., investigatory stop or arrest, or the type of search involved, i.e., frisk or full search. Instead, the propriety of the deputy's actions must be judged by the facts known by the deputy when he decided to detain appellant and require him to leave the vehicle.

{¶21} Given that Deputy Schupska did not allow appellant's vehicle to leave the scene, but instead took steps to identify appellant and then required him to exit the vehicle, there is no dispute that appellant was subject to an investigatory stop. On the other hand, there are no objective facts to support the conclusion that he was placed under arrest until after the deputy found the firearm in his pants' pocket. As to the search of appellant's person, the undisputed facts indicate that the deputy did not touch appellant until after he expressly stated he had a concealed firearm in his pocket. Appellant does not contest the obvious conclusion that, once he admitted possession of a firearm, Deputy Schupska had probable cause to search him for the weapon.

{¶22} Therefore, the sole issue arising from appellant's detention is whether the

7

deputy had a reasonable suspicion of criminal behavior to justify the investigatory stop. As an alternative argument, appellant maintains that the stop was illegal because there was nothing in his behavior to show that he was engaging in criminal activity or posed a physical threat to either deputy. In support, appellant emphasizes that McCaleb already had been removed from the vehicle by the time Deputy Schupska exited his cruiser. He further argues that the fact that McCaleb may have had a firearm does not mean that he was armed and dangerous.

{¶23} "A police officer may conduct an investigative stop, a *Terry* stop, if the officer's observations 'lead him to reasonably suspect that a particular person's behavior is criminal (* * *).' *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, * * * ¶13, citing *Berkemer v. McCarty*, 468 U.S. 420, 439, * * * (1984), citing *Terry v. Ohio*, 392 U.S. 1, * * * (1968). '[T]he officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."' *State v. Andrews*, 57 Ohio St.3d 86, 87, * * * (1991), quoting *Terry* at 21. * * * The facts considered should be drawn from the 'totality of the surrounding circumstances(,) (* * *) viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' (Citations omitted.) [*Id.*, quoting *Terry* at 21-22]. And a reviewing court 'must give due weight to (the officer's) experience and training and view the evidence as it would be understood by those in law enforcement.' (Citations omitted.) *Id.* at 88." *Henderson*, 2013-Ohio-1369, ¶10.

{¶24} In this case, appellant was the driver of a vehicle that Lauren McCaleb got into after he was chased from the mall. When this incident occurred, Deputy Schupska was aware from prior experience that there were warrants for McCaleb's arrest based upon prior shoplifting incidents at that mall. The deputy was also aware that McCaleb

8

had used a "get-away" vehicle in some of the prior incidents. In light of these facts, the deputy had reasonable suspicion that appellant was aiding McCaleb in the commission of a theft offense or was aiding him in avoiding apprehension on the outstanding warrants.

{¶25} As part of a pat-down search for a firearm, Deputy Schupska also had the authority to ask appellant if he had any weapons or dangerous items on his person. In discussing the parameters of a valid investigatory stop, this court has concluded that a police officer is not required to inform a suspect of his *Miranda* rights prior to asking, in the context of an investigatory stop, whether he has any weapons; such a query is permissible as part of "simply on-scene investigative questioning * * *." *King*, 2004-Ohio-2598, ¶19. In turn, given appellant's admission that he had a firearm, the deputy could conduct a full search.

{¶26} Taken as a whole, Deputy Schupska was in the midst of a valid investigatory stop when appellant made his "firearm" admission. Thus, the denial of the motion to suppress was proper. Appellant's sole assignment is without merit.

{¶27} Consistent with the foregoing analysis, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

9