[Cite as *State v. Campbell*, 2018-Ohio-3181.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

      Plaintiff-Appellee,              :

                                No. 17AP-713

v.                                         :          (C.P.C. No. 16CR-3110)

Londale J. Campbell,                       :          (ACCELERATED CALENDAR)

      Defendant-Appellant.            :

---

D E C I S I O N

Rendered on August 9, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

**On brief:** *Garry A. Sabol*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Londale J. Campbell, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion to suppress evidence uncovered in a search of his vehicle and person and convicting appellant of possession of cocaine, in violation of R.C. 2525.11, and possession of heroin, also in violation of R.C. 2525.11. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Columbus Division of Police Officer Kevin George testified at the suppression hearing that he is a 17-year veteran of the Columbus Police Department ("CPD"), and he has spent the last six years on a Community Response Team conducting foot and vehicle patrol duties throughout the various police precincts in the Columbus area. At

approximately 5:00 p.m. on August 30, 2014, George and his partner, Officer Jeremy Phalen, were conducting a vehicle patrol in a marked police cruiser in an area of Columbus near the Prater Complex on Livingston Avenue near Nelson Road. According to George, the Prater Complex is a small strip mall containing a restaurant, barber shop, and beauty salon. George testified that CPD has identified the area surrounding the Prater Complex as a "hotspot," which means that it is a high crime area. (Tr. Vol. I at 18.)[1] When asked to describe the area, George testified "[i]t's rough, high crime. I have made several arrests in the Prater Complex for drugs, for guns, I got wanted felons, Columbus' most wanted in the parking lot." (Tr. Vol. I at 27.) George related on several occasions in the past, the owner of the Prater Complex has personally complained to him about narcotics trafficking in the parking lot.

{¶ 3} Phalen is an 18-year veteran of the CPD who has partnered with George on and off for the last four years. Phalen expressed the same opinion as his partner regarding the area surrounding the Prater Complex. Phalen has personally recovered guns from that parking lot as well as bulk narcotics. According to Phalen, he knows of several shootings that have occurred in the two or three block radius of the complex.

{¶ 4} According to George, he and Phalen spotted two individuals sitting in a vehicle parked in the Prater Complex parking lot. As Phalen slowly drove his marked police cruiser past appellant's parked vehicle, from a distance of 12 to 15 feet, George saw appellant react to the cruiser by first looking back over his shoulder and then leaning forward toward the floorboard before sitting up and reaching his right hand behind him. Phalen stopped the cruiser a short distance from appellant's vehicle and both officers exited. George cautiously approached the driver's side of the vehicle, and he placed his hand on his weapon when he saw appellant still had his right hand behind him. Phalen approached the passenger side of the vehicle. When George reached the open driver's side window, appellant placed his right hand in his lap, and he told George he was just adjusting his seat belt. George was skeptical of appellant's unsolicited explanation for his conduct, and he could see appellant had "folded up money" in his left hand. (Tr. Vol. I at 28.)

---

[1] George testified that "[a] hotspot is deemed to be an area, whether it's an apartment complex or whatever, by a sergeant or a lieutenant, somebody higher than me, where we've had shootings, crimes of violence, complaints that come in, say, that narcotics activity is occurring there, things of that nature." (Tr. Vol. I at 19.)

{¶ 5}   When Phalen reached the passenger's side window, he told George he could see a small amount of marijuana in plain view on the floorboard of the vehicle in front of appellant.  Phalen told George there was marijuana in the vehicle.  At that point in time, George asked appellant to step out of the vehicle, and he told appellant he was going to conduct a pat-down search.  George explained to the court how he conducted a pat-down search:

> A:  I do an open-palm hand frisk across his body.  I start at the waistband.  Normally, if there's any type of firearm, that's where the hands can go first.  Then I'll do the pockets, and I'll do up and down the legs.  I'll do the chest, do the back, and I'll do the buttocks and groin area.
>
> Q.  Why do you do this kind of frisk to the buttocks and groin area?
>
> A.  Two reasons.  One was, specifically, that he was reaching his hands back in the buttocks area.  Two, I've made numerous arrests where individuals will hide contraband in their underwear, in their pants, in their buttocks.
>
> Q.  This frisk, you ordered him out of the car, had him put his hands behind his back, and you frisked him?
>
> A.  Yes.

(Tr. Vol. I at 31-32.)

{¶ 6}   George went on to explain the results of the pat-down search as follows:

> Q.  Do you feel anything as you're doing this frisk?
>
> A.  Yes.
>
> Q.  What do you feel?
>
> A.  I feel a bag of coke in his back, his buttocks area.
>
> Q.  As you recall it, can you tell it's cocaine?
>
> A.  Yes, it's solid.  Upon doing that, I immediately handcuff him.
>
> Q.  Where was this bag at?  You said his buttocks.  Can you be more specific?

A. Like at the bottom of the cheeks.

Q. So you pat him down, and you feel this bag?

A. Yes.

Q. And you believe it's coke based on the feel of it?

A. Yes.

(Tr. Vol. I at 32.)

{¶ 7} When George felt the object under appellant's pants, he placed appellant in handcuffs. After George placed handcuffs on appellant, he left appellant with another officer who had arrived at the scene to return to his cruiser to retrieve his Miranda warnings card. He also informed Phalen that he believed appellant had cocaine on his person in his buttocks area. As Phalen prepared to conduct a second pat-down search of appellant's person, appellant told the officers "[i]t's powder," which George understood to mean that the object George had felt when he had searched appellant was cocaine in a powdered form. (Tr. Vol. I at 36.) In a subsequent search of appellant's person, incident to arrest, police recovered cocaine and heroin. The search of appellant's vehicle yielded a small amount of marijuana and marijuana residue.

{¶ 8} On June 10, 2016, a Franklin County Grand Jury indicted appellant for possession of heroin in violation of R.C. 2925.11, a fourth-degree felony, and possession of cocaine, in violation of R.C. 2925.11, a first-degree felony. Appellant filed a motion to suppress the evidence uncovered in the warrantless search of his person on September 29, 2016 arguing that appellant's detention "was not based on any reasonable suspicion of criminal activity" and that "any evidence obtained as a result of the detention * * * and subsequent search * * * must be suppressed." (Sept. 29, 2016 Mot. to Suppress at 3-4.)

{¶ 9} On January 12, 2017, the trial court held an evidentiary hearing on appellant's motion to suppress. On January 13, 2017, the trial court announced its decision denying the motion. The trial court acknowledged appellant's motion presented a "close call," but the trial court found the initial pat-down search of appellant was supported by a reasonable suspicion that appellant was involved in criminal activity. (Tr. Vol. II at 10.) Accordingly,

the trial court determined police did not violate appellant's Fourth Amendment rights in conducting the initial search of appellant's person which eventually lead to appellant's arrest and the discovery of cocaine and heroin.

{¶ 10} Appellant subsequently entered a plea of no contest to the charges in the indictment.  On September 27, 2017, the trial court convicted appellant of the charges in the indictment and sentenced appellant to a mandatory prison term of 5 years for the conviction of cocaine possession and 17 months for possession of heroin.  The two sentences were to be served concurrently.

{¶ 11} Appellant timely appealed to this court from his conviction and sentence.

## II.  ASSIGNMENTS OF ERROR

{¶ 12} Appellant sets forth three assignments of error as follows:

> [1.] THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS IN THAT NO PROBABLE CAUSE EXISTED FOR THE SEARCH AND SEIZURE.
>
> [2.] THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS IN THAT LAW ENFORCEMENT FAILED TO POINT TO A SPECIFIC AND ARTICULABLE FACTS THAT SHOW CRIMINAL ACTIVITY IS AFOOT.
>
> [3.] THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS IN THAT LAW ENFORCEMENT EXCEEDED THE PERMISSIBLE SCOPE OF A SEARCH UNDER REASONABLE SUSPICION.

## III. STANDARD OF REVIEW

{¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of fact finder and, accordingly, is in the best position to resolve factual questions and evaluate witness credibility." *Columbus v. Body*, 10th Dist. No. 11AP-609, 2012-Ohio-379, ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  "As such, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence." *Body* at ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).  "Accepting these

facts as true, the reviewing court must then independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard." *Body* at ¶ 9, citing *Burnside* at ¶ 8, citing *State v. McNamara,* 124 Ohio App.3d 706 (4th Dist.1997).  *See also State v. Neal*, 10th Dist. No. 15AP-771, 2016-Ohio-1406, ¶ 7, citing *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 6.

## IV.  LEGAL ANALYSIS

{¶ 14} At the outset of our discussion, we note that appellant's assignments of error and argument challenge the constitutionality of George's initial pat-down search of appellant's person only. Appellant claims because the initial search was constitutionally impermissible, the evidence discovered in the subsequent search of appellant's person, incident to arrest, was inadmissible.  Accordingly, we shall confine our discussion and analysis to the constitutionality of George's initial search of appellant's person. Furthermore, because our resolution of appellant's second and third assignments of error is dispositive of this appeal, we will discuss appellant's second and third assignments of error out of order.

### A.  Second Assignment of Error

{¶ 15} In appellant's second assignment of error, appellant contends that George's initial search of appellant's person violated appellant's Fourth Amendment rights because George did not have a reasonable suspicion, based on specific, articulable facts, that criminal activity was afoot.  We disagree.

{¶ 16} The Fourth Amendment to the United States Constitution, as well as Article I, Section 14 of the Ohio Constitution, prohibits unreasonable searches and seizures rendering them per se unreasonable unless an exception applies.  *State v. Johnson*, 10th Dist. No. 16AP-689, 2017-Ohio-5527, ¶ 18; *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998). "One such exception, recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), permits a police officer to 'stop or detain an individual without probable cause when the officer has a reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot.' "  *State v. Pinckney*, 10th Dist. No. 14AP-709, 2015-Ohio-3899, ¶ 18, quoting *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16 (10th Dist.). "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than

the level of suspicion required for probable cause.' " *Jones* at ¶ 17, quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

{¶ 17} " 'The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 52, quoting *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus. "[T]he circumstances surrounding the stop must 'be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.' " *Bobo* at 179, quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976); *State v. Michael*, 10th Dist. No. 12AP-508, 2013-Ohio-3889, ¶ 12.

{¶ 18} "[T]he Ohio Supreme Court has identified several factors that can be considered in determining the reasonableness of an investigatory search and seizure: (1) location, which may include whether the area was a 'high-crime' area or under police surveillance; (2) the officer's experience, training, or knowledge, including particular knowledge of crimes in the area; (3) the suspect's conduct or appearance, including suspicious movements, hiding, or ducking; and (4) the surrounding circumstances, which may include time of day or night and whether the officer was away from protection or without backup." *State v. Taylor*, 10th Dist. No. 05AP-1016, 2006-Ohio-5866, ¶ 6, citing *Bobo* at 178-79; *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). No single factor is dispositive, as the decision must be viewed based on the totality of the circumstances. *Bobo* at paragraph one of the syllabus.

{¶ 19} Here, the testimony establishes the Prater Complex area where officers encountered appellant is a well-known "hotspot" for criminal activity. (Tr. Vol. I at 23.) George and Phalen have both arrested felons in the complex and have made arrests for illegal narcotics activity. Phalen has recovered firearms and bulk narcotics from the Prater Complex, and the owner of the complex has personally complained to George about narcotics trafficking in the parking lot. Thus, overwhelming evidence establishes the Prater Complex as a high-crime area.

{¶ 20} The testimony also establishes both George and Phalen are veteran police officers with 35 years of experience between them. They are part of the Community Response Team that focuses on citizen encounters and dealing with the particular type of crime for which appellant was convicted. Both officers have extensive experience, training,

and knowledge, including particular knowledge of crimes in the Prater Complex and surrounding area.[2]

{¶ 21} George and Phalen first saw appellant's vehicle parked diagonally in the parking lot. As the officers slowly drove past the vehicle at a distance of 12 to 15 feet, both officers saw appellant react to their presence by looking over his shoulder and then leaning forward in his seat to reach toward the floorboard. George saw appellant then reach back behind him with his right hand. Both officers became concerned appellant may be armed.

{¶ 22} As George approached the open driver's side window on foot, he saw appellant still reaching his right hand behind him towards his buttocks area. According to George, appellant then brought his right hand back to his lap and told George he had been adjusting his seat belt. George was suspicious of appellant's statement and noticed appellant had "folded up money" in his left hand. (Tr. Vol. I at 28.) Phalen approached the vehicle on the passenger's side and saw what he believed was marijuana, in plain view, on the floor of the vehicle in front of appellant. The trial court believed Phalen's testimony that he saw marijuana on the floor of appellant's vehicle. Phalen immediately told George there was marijuana in the vehicle.

{¶ 23} We acknowledge possession of a small amount of marijuana is a minor misdemeanor in Ohio and, therefore, not an arrestable offense. However, we find the presence of a small amount of marijuana in plain view in appellant's vehicle when combined with the other facts and circumstances known to these officers, including appellant's furtive conduct on seeing law enforcement, and the fact the Prater Complex is a high-crime area, provided George with a reasonable suspicion, based on specific, articulable facts, that criminal activity was afoot. The Supreme Court of Ohio has observed "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *State v. Evans*, 67 Ohio St.3d 405, 413 (1993), citing *State v. Williams*, 51 Ohio St.3d 58 (1990); *United States v. Ceballos*, 719 F.Supp. 119, 126 (E.D.N.Y.1989). Thus, the search in this case was not based on a mere suspicion or hunch but on articulable facts that would permit a reasonably prudent officer

---

[2] In *State v. Bazrawi*, 10th Dist. No. 12AP-1043, 2013-Ohio-3015, this court relied on evidence produced at a suppression hearing establishing both George and Phalen were "experienced law enforcement officer[s]," and they each had "extensive experience in detecting the odor of burnt marijuana." *Id.* at ¶ 21.

to believe that appellant was engaging in illegal narcotics activity and that he could be armed.

{¶ 24} We disagree with appellant's contention that the search was illegal because George had decided to search appellant even before he reached the vehicle. Though George admitted it was his intention to search appellant for weapons when he approached the vehicle, "[t]he constitutional requirement of 'reasonableness' with respect to searches and seizures 'allows certain actions to be taken in certain circumstances, *whatever* the subjective intent.' " (Emphasis sic.) *State v. Dennewitz*, 4th Dist. No. 99 CA 2491 (Nov. 5, 1999), quoting *Whren v. United States*, 517 U.S. 806, 814 (1996). In our view, the evidence produced at the suppression hearing leaves us with no doubt that George had a reasonable suspicion appellant was engaged in criminal activity when he removed appellant from his vehicle to conduct a pat-down search of appellant's person.

{¶ 25} Accordingly, appellant's second assignment of error is overruled.

### B.  Third Assignment of Error

{¶ 26} In appellant's third assignment of error, appellant argues that even if a reasonable suspicion that appellant was engaged in criminal activity arose under these facts, George's search of appellant's person exceeded the permissible scope of a *Terry* search when George conducted the pat-down of appellant's groin and buttocks. We disagree.

{¶ 27} *Terry* permits a police officer to " 'stop or detain an individual without probable cause when the officer has a reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot.' " *Pinckney*, 2015-Ohio-3899, at ¶ 18, quoting *Jones*, 2010-Ohio-2854, at ¶ 16. Thus, *Terry* permits a law enforcement official who suspects criminal activity may lawfully stop an individual and make a limited search of that person based on grounds less than probable cause. *Andrews*, 57 Ohio St.3d at 89. The legal justification for the *Terry* search is the protection of the police officer and others nearby, and the permissible scope of a *Terry* search is limited to a search reasonably designed to discover concealed "guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id.* at 29.

{¶ 28} There have been several appellate decisions out of the Second District Court of Appeals that have considered whether a pat-down search of a suspect's buttocks area

exceeds the permissible scope of a *Terry* search. In *State v. Allen*, 2d Dist. No. 22663, 2009-Ohio-1280, an arresting officer found crack cocaine between the cheeks of the defendant's buttocks while patting the defendant down for weapons. *Id.* at ¶ 10. The officer testified, however, that he was not required to reach between the cheeks of the defendant's buttocks; instead, it was an "outside pat of the buttocks." *Id.* at ¶ 44. The officer further related that "[t]he actual rock was protruding where it was stuck out. Not that you could see it with the naked eye to look, but all you had to do is just put your hand on it * * * and you feel it sticking out." *Id.* at ¶ 42. In affirming the trial court's decision to deny appellant's motion to suppress, the *Allen* court held that because the search for weapons was limited to the exterior of appellant's clothing, and because the officer did not search between the crack of appellant's buttocks, the pat-down search did not exceed the permissible scope of a *Terry* search. *Allen* at ¶ 45.

{¶ 29} The court reached a similar conclusion in *State v. Montague*, 2d Dist. No. 25168, 2013-Ohio-811. In that case, the officer testified he had, in his experience, found weapons in the lower groin and buttocks area of suspects. In light of the officer's testimony, the court held the officer did not exceed the permissible scope of a lawful pat-down search. Likewise, in *State v. McBeath*, 2d Dist. No. 23929, 2010-Ohio-3653, the court upheld the denial of the appellant's motion to suppress on concluding the search of appellant's buttocks area did not exceed the permissible scope of a *Terry* search. In so holding, the court noted "[t]he patdown for weapons was limited to the exterior of [appellant's] clothing [and the officer] used a flat hand, and [the officer] did not search between the crack of [appellant's] buttocks." *Id.* at ¶ 31.

{¶ 30} Here, George testified his pat-down search included the buttocks and groin area because he had previously seen appellant react to his presence by reaching behind his back towards his buttocks. He stated he used an open hand to feel the outside of appellant's clothing in the buttocks and groin area. There is no evidence that George reached between the cheeks of appellant's buttocks. George related that in his experience, suspects have hidden "contraband" in their buttocks area. (Tr. Vol. I at 31.) Contrary to appellant's assertion, we do not conclude from George's testimony at the suppression hearing that George intended the term "contraband" to include only drugs or drug paraphernalia. Nor do we agree with appellant's characterization of the pat-down search as "an extensive feel

of the object beyond merely determining whether the item was a weapon." (Appellant's Brief at 11.) George testified as follows:

> Q. So you pat him down, and you feel this bag?
>
> A. Yes.
>
> Q. And you believe it's coke based on the feel of it?
>
> A. Yes.
>
> Q. How large is this bag?
>
> A. It's a good size, and it's compressed, so it's solid. So, I mean, the total weight was over -- the total of the bags was around an ounce when we're done. It's a good sum of cocaine.
>
> * * *
>
> THE COURT: What made you think it was drugs?
>
> THE WITNESS: One reason is because I've never gotten anything in somebody's underwear that wasn't either contraband, whether it was drugs, *whether it was a gun* or whether it was some type of pipe or paraphernalia.
>
> THE COURT: You knew it wasn't a weapon, correct?
>
> THE WITNESS: Yes.
>
> Q. Did you feel this thing, and in your mind, it's drugs?
>
> A. Yes.
>
> Q. And you're patting him down for weapons at this point?
>
> A. Yes.

(Emphasis added.) (Tr. Vol. I at 32-34.)

{¶ 31} In announcing its ruling in this matter, the trial court found that George was a "very credible witness" and that Phalen "was credible also." (Tr. Vol. II at 3.) In light of George's testimony regarding the open-handed manner in which he conducted the pat-down search, the types of contraband, including weapons, that suspects have concealed in

the buttocks area under their pants, and his observations of appellant's conduct immediately prior to the search in furtively reaching his right hand behind his back towards his buttocks, we find that George's pat-down search of appellant did not exceed the permissible scope of a *Terry* search for weapons. *Allen*; *Montague*; *McBeath*. *See also Michael*, 2013-Ohio-3889, at ¶ 26 (officer acted reasonably and did not exceed the scope of a *Terry* search when he lifted defendant's shirt in the exact area where he suspected the presence of a gun because it was a minimal intrusion reasonably designed to discover a gun). George testified once he felt the object with an open palm, he knew it was cocaine and not a weapon. The trial court believed George's testimony. Based on our consideration of the totality of the circumstances, we hold George did not violate appellant's Fourth Amendment rights when he removed appellant from the vehicle to conduct a pat-down search of appellant's person, including appellant's groin and buttocks area.

{¶ 32} Once George discovered what he believed to be cocaine during his initial search of appellant, he placed appellant in handcuffs and informed Phalen that he believed appellant was in possession of cocaine. The trial court found that George arrested appellant when he cuffed him and that probable cause supported the arrest. As noted above, appellant does not argue in this appeal that police did not have probable cause to arrest appellant, and he does not independently challenge the second pat-down search by Phalen.

{¶ 33} For the foregoing reasons, appellant's third assignment of error is overruled.

## C. First Assignment of Error

{¶ 34} In appellant's first assignment of error, appellant argues George's initial warrantless search of appellant's person violated his Fourth Amendment rights because George did not have probable cause to believe appellant had committed or was about to commit a crime. The trial court, however, did not find that probable cause supported the initial search of appellant's person. Moreover, having determined the initial search of appellant's person was authorized under *Terry*, a determination by this court that the search was not supported by the more demanding standard of probable cause would not require reversal of the trial court judgment. Consequently, any trial court error with regard to probable cause is harmless error.

{¶ 35} For the foregoing reasons, appellant's first assignment of error is overruled.

## V.  CONCLUSION

{¶ 36} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____